**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **CHRIS WILSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 17-1027-JWL** |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.  Background**

Plaintiff applied for DIB and SSI benefits, alleging disability beginning July 19, 2015. (R. 20, 234, 236). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She argues that the ALJ

erred in weighing the medical opinions of her treating specialists, Dr. Mumford, Dr. Wang, and Dr. Sankoorikal.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless,

the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, the claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, the claimant is able to perform other work

in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the ALJ's evaluation of the medical opinions.

## II. Discussion

Plaintiff acknowledges that Dr. Mumford opined that with close parking and the use of an assistive device Plaintiff would be able to perform sedentary work, but she argues that while Dr. Mumford treated Plaintiff for osteonecrosis, he did not treat her "for the underlying disorder that led to osteonecrosis of both hips: neurosarcoidosis treated with Remicade infusions and prednisone." (Pl. Br. 11). She argues that both Dr. Wang and Dr. Sankoorikal are specialists who treated Plaintiff for neurosarcoidosis and opined that she has limitations which would preclude all gainful work and that the ALJ should have accorded greater weight to their opinions than to the opinion of Dr. Mumford. Id. at 11-12. She argues that Dr. Wang's and Dr. Sankoorikal's are the only medical opinions that considered neurosarcoidosis, their opinions generally agree, the reasons the ALJ provided to discount them are insufficient, and the ALJ failed to account for the diagnosis

of sarcoidosis and the finding by Dr. Wang of "significant physical disability" despite overall improvement in Plaintiff's condition. (Pl. Br. 14) (quoting R. 943).

The Commissioner argues that substantial record evidence supports the ALJ's evaluation of the medical opinions. (Comm'r Br. 3-4). She argues that each reason given by the ALJ to discount Dr. Wang's and Dr. Sankoorikal's opinions is supported by the record evidence and that Plaintiff's contrary arguments rely merely on the suggestion that the ALJ might have reached a different conclusion based upon the same evidence. Id. at 4-8. In her Reply Brief, Plaintiff reiterates her arguments, distinguishes the cases cited by the Commissioner, and argues that the ALJ failed to explain how Dr. Wang's and Dr. Sankoorikal's opinions cannot be supported by the evidence.

### A.     The ALJ's Findings

The court begins, as it must, with the ALJ's decision as he characterized it, not as Plaintiff or as the Commissioner view it. This is so because if the record evidence will support two or more conclusions, and one of those is the conclusion reached in the decision at issue, the court must affirm the decision. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Here, the ALJ weighed each of the medical opinions in the record. Plaintiff places at issue only the medical opinions regarding her physical abilities, and the court will not further discuss the opinions regarding her mental abilities. The ALJ accorded only limited weight to the opinions of the state agency medical consultants because subsequent evidence showed that Plaintiff had "hip related impairments," and the evidence submitted at the hearing level "indicates the claimant is more limited." (R. 29). He afforded great weight to Dr. Mumford's opinion because "[h]e is a treating physician and his opinion is consistent with the record that shows that she required hip replacement surgery, but she should fully recover from this surgery." Id. The ALJ stated he afforded only partial weight to Dr. Wang's treating source opinions because the limitations opined "are not fully supported by the record," because "[t]here is no evidence that [Plaintiff] would have at least four bad days a month," because after a diagnosis was finally made and treatment began "her functioning greatly improved," because Dr. Wang's opinions were not supported by her treatment notes, and because an opinion on the ultimate issue of disability is reserved to the Commissioner. Id. Finally, the ALJ afforded only partial weight to the medical opinion of Dr. Sankoorikal because "there is no indication [Plaintiff] is as limited as [Dr. Sankoorikal] has alleged," because "she did not have any residual loss of strength or sensation in her upper extremities," and because "[h]is opinions are inconsistent with the fact that her condition was stable with treatment." (R. 30).

### B.      Standard for Evaluating Treating Physician Medical Opinions

A treating physician's opinion about the nature and severity of a claimant's impairments should be given controlling weight by the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When a treating physician's opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned that opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Watkins, 350 F.3d at 1300.  Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is]

'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

After considering the factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. If he rejects the opinion completely, he must give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

### C.  Analysis

Plaintiff does not really argue that the reasons the ALJ gave for according Dr. Mumford's opinion great weight are erroneous. Rather, she argues that Dr. Mumford is not a specialist in treating neurosarcoidosis, did not treat Plaintiff for neurosarcoidosis, and did not consider neurosarcoidosis in forming his opinion. Therefore, she argues that the opinions of Drs. Wang and Sankoorikal, who are specialists, should have been given greater weight than that of Dr. Mumford. However, the reasons given by the ALJ for giving great weight to Dr. Mumford's opinion are supported by the record evidence and it was appropriate for Plaintiff not to argue otherwise. Although Dr. Mumford does not specialize in treating sarcoidosis, it is wrong to suggest that he did not consider that impairment when forming his opinion, because his treatment record reflects that Plaintiff "was diagnosed with sarcoidosis and multiorgan involvement," which was managed with "fairly high-dose steroids initially." (R. 1073). He then diagnosed steroid-induced osteonecrosis, id. at 1068, 1075, with subchondral collapse in the right hip, recommended replacement of the right hip, and warned Plaintiff that her left hip may also progress to

8

the point of needing replacement in the future. (R. 1068-69). Dr. Mumford did consider Plaintiff's sarcoidosis when treating her, and nevertheless opined that she would be able to work, with close parking and use of an assistive device. While sarcoidosis is not within his specialty, that alone does not require that his opinion be accorded less weight than the opinions of Drs. Wang and Sankoorikal, for he also is a specialist, and rendered an opinion within the scope of his specialty.

Nonetheless, if the opinions of Drs. Wang and Sankoorikal should have been given substantial weight, those opinions might require a finding of disability despite the opinion of Dr. Mumford. Plaintiff argues that they should have been and they do. Thus, the real question is whether the ALJ provided specific, legitimate reasons for discounting the opinions of Drs. Wang and Sankoorikal. The court finds that he did.

Plaintiff first argues that the fact that Dr. Wang's opinion was "not fully supported by the record" (R. 29) (emphasis added) is not a good reason to discount the opinion, because Social Security Ruling (SSR) 96-2p "explains that for the opinion of a treating source to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, 'it is not necessary that the opinion be fully supported by such evidence.'" (Pl. Br. 12) (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)) (emphases added). In this argument, Plaintiff misunderstands and misapplies SSR 96-2p. SSR 96-2p is entitled, "Giving Controlling Weight to Treating Source Medical Opinions," and explains that in order to receive controlling weight a treating source medical opinion must be well supported by medically acceptable clinical and laboratory diagnostic techniques

9

and must be "not inconsistent" with the other substantial evidence in the case record. Id. In finding Dr. Wang's opinions "not fully supported by the record," the ALJ was not explaining why he had not accorded the opinion controlling weight, he was explaining why he had discounted the opinion. Moreover, SSR 96-2p explains only that a treating source opinion need not be <u>fully supported</u> by medically acceptable clinical and laboratory diagnostic techniques in order to be <u>well-supported</u> by medically acceptable clinical and laboratory diagnostic techniques. In the reason at issue here, the ALJ did not find that Dr. Wang's opinion was not fully supported <u>by medically acceptable clinical and laboratory diagnostic techniques</u>. Rather, he found that it was not fully supported <u>by the record</u>. There is no error in relying on this as one of five reasons to discount the opinion.

Plaintiff argues that it was error for the ALJ to rely on the improvement in Plaintiff's condition because he did not cite "any source for the conclusion that [Ms.] Wilson's improvement in functioning equated to an ability to engage in substantial gainful activity," and her improvement <u>did not</u> equate to an ability to engage in substantial gainful activity because she "continued to suffer from a number of symptoms which would reasonably impact her functioning." (Pl. Br. 13). Plaintiff's argument misses the point of the ALJ's finding. The point of his finding is that Plaintiff's condition had improved more than Dr. Wang credited, rendering her opinion worthy of less weight.

He summarized the evidence, noting that Plaintiff began reporting unexplained symptoms in June 2015, the cause of which was not diagnosed for a time and which resulted in hospitalization in late July 2015. (R. 26-27). While hospitalized, she had a

biopsy of her lymph nodes which was consistent with sarcoidosis, and she remained hospitalized until August 18, 2015 when she was transferred to the Kansas Rehabilitation Hospital for approximately ten days, and was then discharged to home with in-home health care through early October 2015. (R. 27). Plaintiff was once again hospitalized on October 2, 2015, and was diagnosed with and treated for neurosarcoidosis. Id. The ALJ summarized the records regarding Plaintiff's follow-up treatment after she was released from that hospitalization, noting the improvements revealed therein. Id. He specifically summarized Dr. Wang's treatment notes from February 2016:

> She was seen for an additional follow up examination in February 2016 (Exhibit 17F, pp. 2-5). At that time, she reported being happy with her neurological improvement (Exhibit 17F, p. 3). She exhibited slightly reduced strength in her eye muscles and jaw muscles. Otherwise, her strength was normal. She exhibited diminished normal sensation. Her reflexes were diminished throughout. She exhibited a normal casual gait. She exhibited difficulty with tandem walking. She was continued on Methotrexate. It was advised that she undergo Remicaid infusions if her insurance would pay for them (Exhibit 17F, p. 5).

(R. 27) see also (R. 940-43). This evidence supports the ALJ's finding of improvement in Plaintiff's condition and, as Plaintiff admits "both providers [(Drs. Wang and Sankoorikal)] acknowledged [Ms.] Wilson's improvement." (Pl. Br. 16) (citing R. 943 ("Pt overall improved."), and R. 1173 ("She is getting better.")).

Plaintiff argues that, nonetheless, each physician opined that she continued to suffer from significant limitations and that the ALJ has cited no "medical opinion that the record evidence did not support the opinions of either Dr. Wang or Dr. Sankorikal." Id. at 16-17 (citing Farmer v. Astrue, No. 09-2505-JWL, 2010 WL 3613931, at *12 (D. Kan.

11

Sept. 8, 2010)). Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. §§ 404.1545(a), 416.945(a). Moreover, the final responsibility for determining RFC rests with the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946. Although Plaintiff's Brief reflects the apparent belief that there must be a contrary medical opinion before an ALJ may discount a medical opinion (Pl. Br. 13 ("the only other physician to provide an opinion on this subject also opined that [Ms.] Wilson would have four bad days a month"), 15 ("Dr. Wang's opinion is supported by the only other opinion in the record that considered [Ms.] Wilson's neurosarcoidosis."), 17 ("the ALJ failed to cite to any medical opinion that the record evidence did not support the opinions of either Dr. Wang or Dr. Sankoorikal")), that is not the standard to be applied. Moreover, the ALJ relied on Dr. Mumford's opinion that Plaintiff is able to work, and as noted above, Dr. Mumford was aware of and considered Plaintiff's diagnosis of sarcoidosis.

Plaintiff's argument that she "continued to suffer from a number of symptoms which would reasonably impact her functioning" (Pl. Br. 13), is likewise unavailing. To be sure, Plaintiff has remaining symptoms resulting from her impairments, and as the ALJ found, Plaintiff's impairments (including neurosarcoidosis) are severe within the meaning of the Act because they "cause significant limitations in the claimant's ability to perform basic work activities." (R. 22). But, that does not equate to a finding that her limitations preclude all substantial gainful activity, and Plaintiff points to no record evidence beyond the opinions of Drs. Wang and Sankoorikal that they do. More than minimal impact on functioning is not the same as disability as defined in the Act and the regulations.

This court's opinion in Farmer does not require a different conclusion. In Farmer, the ALJ considered the opinions of the state agency medical consultants, program physicians and psychologists and accorded them weight, he also "discussed the opinions of eleven named 'acceptable medical sources,' the opinions of unnamed medical sources treating Plaintiff at Bert Nash Community Mental Health Center, and the opinions of three ' "other" medical sources.' " Farmer, 2010 WL 3613931, at *2. The ALJ in Farmer accorded little weight to the opinions of each of twelve health care providers who treated Ms. Farmer and who stated limitations which, if accepted, required a finding of disability, "and as to nine of the providers, did so at least in part, because the opinion was not consistent with the 'totality of the evidence.'" Id. at *11. The court found that "substantial evidence on the record as a whole does not support the ALJ's finding that 'the totality of the evidence' is inconsistent with the opinions." Id. It went on to note,

13

"The health care providers opinions which were discounted by the ALJ simply <u>are not</u> inconsistent with the 'totality of the evidence.'  In fact, they are substantially supported by the totality of the evidence as discussed above.  One might even say that through accumulation they have <u>become</u> the 'totality of the medical evidence.'" <u>Id.</u>, 2010 WL 3613931, at 14 (emphases in original).  The court's concern in <u>Farmer</u> was not that there were <u>medical opinions</u> contrary to the ALJ's findings, but that the <u>record evidence viewed as a whole</u> was contrary to the ALJ's findings.  Moreover, the court went on to find that <u>Farmer</u> was one of those rare cases where the administrative record had been fully developed and substantial and uncontradicted evidence on the record as a whole indicated that Ms. Farmer was disabled and entitled to benefits.  <u>Id.</u> at 17.  Consequently, the court remanded for an immediate award of benefits.  <u>Id.</u>  This is not that case.

Plaintiff lastly claims error in the ALJ's finding that Dr. Wang's opinion is not supported by her own treatment notes.  (Pl. Br. 14-15).  This is so, in Plaintiff's view because the ALJ did not explain how Plaintiff's improvement was inconsistent with Dr. Wang's opinion, because he failed to recognize limitations reported in Dr. Wang's treatment notes, and he substituted his lay opinion for the medical judgment of Dr. Wang.  <u>Id.</u> (citing <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1252 (10th Cir. 2002), and <u>Kemp v. Bowen</u>, 816 F.2d 1469, 1476 (10th Cir. 1987)).

The court does not agree, Dr. Wang treated Plaintiff on four visits, and during her hospitalization in October 2015, before providing her medical opinion.  (R. 744-46) (October 1, 2015); (R. 749-51) (October 23, 2015); (R. 876-78) (December 11, 2015); (R.

941-43, 1152-54) (February 23, 2016).  The first visit occurred after Plaintiff had previously been hospitalized with left side numbness and tingling, blurred vision, generalized weakness, slurred speech, difficulty swallowing, and ptosis.  (R. 745).  She had already been diagnosed with sarcoidosis and reported bilateral hearing loss and weight loss of more than 60 pounds.  Id.  Plaintiff's voice had reportedly become high-pitched since her illness, she had placid dysarthria, facial diplegia - left more than right, diminished reflexes, she was assisted to stand and walk a few steps, demonstrating muscle weakness and "foot drop gait."  Id. at 746.  Dr. Wang noted Plaintiff had "significant neurological impairment," and she admitted her for IV steroid treatment.  Id.  Treatment notes from her next visit on October 23, 2015 after hospitalization revealed that Plaintiff's condition "improved significantly" while in the hospital and she was "discharged home with slow IV steroid taper."  (R. 749).  Plaintiff walked to the clinic for the second visit, and she was happy with the improvement in her neurological function.  Id.  Physical examination revealed no acute distress, mild dysarthria speech, and recent and remote memory were intact.  Id.  She still had facial diplegia - left more than right, neuronal sensory hearing loss in both ears, all motor muscles tested were rated 4 or 5 out of 5, she had diminished reflexes, and she ambulated with minimal help.  Id., at 750.  Depression screening at that time revealed a score of "0."  Id., at 751.  By her December 11, 2015 visit, Plaintiff was further improved.  She walked to the clinic again, she remained happy with the improvement in her neurological functioning, although she had significant weight gain while on steroids.  (R. 876).  Her speech was now essentially normal, and she

had a "normal causal [(casual?)] gait." Id. at 877.  Her condition was further improved at her February 23 visit.  Dr. Wang noted, "Pt overall improved," although she opined "she still ha[s] significant physical disability."  (R. 943, 1154).  She increased methotrexate, continued folic acid, and decreased prednisone.  Id.

These treatment notes do not indicate the extreme lifting/carrying, postural, handling, sitting, standing, or walking limitations opined by Dr. Wang.  Although Plaintiff clearly has functional limitations remaining, in context, the ALJ's findings are supported by the record evidence.  Especially when considered in light of Dr. Mumford's opinion, and the other four reasons the ALJ gave to discount Dr. Wang's opinion, the court cannot find error in the ALJ's determination that Dr. Wang's opinions are not supported by her treatment notes.

Plaintiff's suggestion that the ALJ substituted his lay opinion for the medical judgment of Dr. Wang also fails.  As noted above, it is the ALJ's duty to assess RFC, and that assessment is to be made based on all of the evidence of record, not just the medical evidence.  It is an administrative judgment, not a medical judgment, and as such is well within the purview of the ALJ.  Plaintiff's argument appears to assume that the ALJ has substituted his lay opinion for the medical judgment of Drs. Wang and Sankoorikal merely because he discounted their medical opinions.  The cases cited by Plaintiff illustrate the error in her argument.  In McGoffin, "the ALJ expressed doubt that [a medical] assessment was actually that of Dr. Luc," Ms. McGoffin's treating physician. 288 F.3d at 1252.  The court found that "unfounded doubt . . . in the face of unrefuted

16

evidence to the contrary, was error." Id. It was not that the ALJ discounted Dr. Luc's opinion that was erroneous, it was that he did so without a basis in the evidentiary record. Kemp is perhaps even more enlightening in this regard. There, Mrs. Kemp's physician testified at the ALJ hearing that he had diagnosed Mrs. Kemp with McArdle's Disease which was medically equivalent to the Listed impairment of Myasthenia gravis, and the court noted his diagnosis was corroborated by a treadmill examination and laboratory reports. 816 F.2d at 1475. The ALJ found that "Mrs. Kemp's muscle weakness has not been specifically diagnosed yet, and that her impairment did not meet or equal the severity of any listed impairment." Id. In Kemp, the ALJ substituted his opinion that Mrs. Kemp's impairment had not been specifically diagnosed, for Dr. Brown's medical opinion (diagnosis) regarding McArdle's Disease. An ALJ is not required to accept a physician's medical opinion, but if he discounts it, he must do so on the basis of reasons supported by the evidentiary record. He may not simply substitute his judgment for the medical opinion.

While it is true that the ALJ could have credited the medical opinions of Dr. Wang and Dr. Sankoorikal over that of Dr. Mumford, Plaintiff does not point to record evidence requiring him to do so. The ALJ provided reasons to discount the opinions of Drs. Wang and Sankoorikal, and those reasons are supported by the record evidence. More is not required. The court finds no error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 15th day of December 2017, at Kansas City, Kansas.

                        s:/   John W. Lungstrum
                        **John W. Lungstrum**
                        **United States District Judge**